UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER V.,[1] <br><br>          Plaintiff, <br><br>     v. <br><br> FRANK BISIGNANO,[2] COMMISSIONER OF SOCIAL SECURITY, <br><br>          Defendant. | Case No. 2:24-cv-9765-AJR <br><br> **MEMORANDUM DECISION AND ORDER** |

# I.

# INTRODUCTION

Alexander V. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented, pursuant to 28

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Frank Bisignano has been substituted in as the Defendant in this action.

U.S.C. § 636(c), to the jurisdiction of the undersigned U.S. Magistrate Judge. (Dkts. 6, 7.) For the reasons stated below, the decision of the Commissioner is REVERSED and this action is REMANDED for further proceedings consistent with this decision.

## II.
## PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on April 11, 2022 and April 12, 2022 respectively. (Dkt. 12-6 at 2-14.) The Commissioner denied both claims by initial determination on October 10, 2022, (Dkt. 12-5 at 9-13), and upon reconsideration on August 2, 2023. (Id. at 17-22.) At Plaintiff's request, an in-person hearing[3] was held on March 12, 2024. (Id. at 34-35, 125-30; Dkt. 12-3 at 38.) Following the hearing, Administrative Law Judge James Carberry (the "ALJ") published an unfavorable decision on May 13, 2024. (Dkt. 12-3 at 18-33.) Plaintiff requested review of the ALJ's decision by the Appeals Council on May 22, 2024. (Dkt. 12-5 at 171-72.) The Appeals Council denied Plaintiff's request for review on September 17, 2024. (Dkt. 12-3 at 2-5.) On that date, the ALJ's decision became the final decision of the Commissioner. See 42 U.S.C. § 405(h). Plaintiff now seeks review of the ALJ's final decision.

## III.
## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits under the Social Security Act ("SSA"), a

---

[3] Plaintiff was represented by an attorney at the hearing and although the hearing transcript indicated Plaintiff appeared telephonically, the Court believes this to be erroneous because Plaintiff objected to a telephonic hearing, the ALJ suggested in his decision that Plaintiff appeared in person, and Plaintiff indicated in his testimony that he drove to the hearing. (Dkt. 12-3 at 24, 40, 45; Dkt. 12-5 at 116.) Based on the transcript, it appears that only the vocational expert appeared at the hearing telephonically. (Dkt. 12-3 at 40.)

claimant must show a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. See 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1). The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020).

Before making the step four determination, the ALJ must pause to assess the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 416.920(e), 404.1520(e). The RFC, defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite the limitations, is relevant to both the fourth and fifth steps of the analysis. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017). A claimant's RFC is "the most [the claimant] can still do despite [their]

3

1 limitations." Id.  The ALJ alone determines a claimant's RFC after consideration of
2 all the relevant evidence in the case record. Id.; see also 20 C.F.R. §§ 404.1546(c);
3 416.946(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the
4 responsibility of the ALJ, not the claimant's physician to determine residual
5 functional capacity.").

6     If, at step four, the claimant meets their burden of establishing an inability to
7 perform past work, then at step five, the Commissioner must show that the claimant
8 can perform some other work that exists in "significant numbers" in the national
9 economy, taking into account the claimant's RFC, age, education, and work
10 experience.  See Ford, 950 F.3d at 1149; 20 C.F.R. §§ 404.1520(g)(1);
11 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational
12 expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20
13 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  See
14 Ford, 950 F.3d at 1149.  When a claimant has both exertional (strength-related) and
15 non-exertional limitations, the Grids are inapplicable and the ALJ must take the
16 testimony of a VE.  See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

17     Throughout the five-step evaluation, the ALJ "is responsible for determining
18 credibility, resolving conflicts in medical testimony, and for resolving ambiguities."
19 Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (internal quotation marks
20 omitted).

## IV.
## THE ALJ'S DECISION

24     The ALJ employed the five-step sequential evaluation process and concluded
25 that Plaintiff was not disabled within the meaning of the Social Security Act.  (Dkt.
26 12-3 at 18-33.)  At step one, the ALJ found that Plaintiff had not engaged in
27 substantial gainful activity since March 1, 2020, the alleged onset date.  (Id. at 26.)
28 At step two, the ALJ found that Plaintiff had one severe impairment:  degenerative

disc disease.  (Id. at 27.)  The ALJ also determined that Plaintiff had the following non-severe impairments: vertigo, anxiety disorder, and depression.  (Id.)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings in the regulations.  (Id. at 29.)

The ALJ then assessed Plaintiff's RFC and concluded that Plaintiff could perform "a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)."  (Id. (bold omitted).)  The ALJ specifically concluded Plaintiff could

> lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; [could] sit, stand and walk for about 6 hours out of an 8 hour work day; [was] precluded from climbing ladders, ropes or scaffolds, but [could] occasionally balance, stoop, crouch, crawl and climb ramps and stairs; and [had to] further avoid any exposure to unprotected hazards of dangerous machinery.

(Id. at 29-30 (bold omitted).)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained" in the ALJ's decision.  (Id. at 30-31.)

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a "[r]eal estate agent."  (Id. at 32 (bold omitted).)  The ALJ did not proceed past step four in the alternative.  (Id. at 18-33.)  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the SSA from March 1, 2020, the alleged onset date, through the date of the ALJ's decision.  (Id. at 32.)

## V.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's

decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. See Ahearn 988 F.3d at 1115-16. Substantial evidence is "more than a mere scintilla," but less than a preponderance: it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (internal quotation marks omitted); see also Ferguson v. O'Malley, 95 F.4th 1194, 1199 (9th Cir. 2024).

"Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Woods v. Kijakazi, 32 F.4th 785, 788 (9th Cir. 2022) (internal quotation marks omitted); see also Ferguson, 95 F.4th at 1199. Although the court cannot substitute its judgment for the Commissioner's, it must nonetheless "assess the entire record, weighing the evidence both supporting and detracting from the [Commissioner's] conclusion." Ahearn, 988 F.3d at 1115. In so doing, the court is limited to reviewing the reasoning provided by the ALJ and "may not affirm the ALJ on a ground upon which he did not rely." SSA § 205, 42 U.S.C. § 405(g); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("[W]e cannot rely on independent findings of the district court. We are constrained to review the reasons the ALJ asserts.").

## VI.
## DISCUSSION

Plaintiff contends that the ALJ failed to sufficiently evaluate the effect of Plaintiff's non-severe mental impairments on his ability to perform his past skilled job. (Dkt. 13 at 6.) For the reasons set forth below, the Court agrees with Plaintiff's ground for relief and REVERSES the decision of the Commissioner.

### A. The ALJ Did Not Properly Account For Plaintiff's Non-Severe Mental Impairments In Formulating The RFC.

Plaintiff contends that the ALJ failed to account for his non-severe mental impairments in formulating Plaintiff's RFC. (Dkt. 13 at 6.) Specifically, Plaintiff contends that the ALJ did not properly address Plaintiff's depression and anxiety in the RFC determination. (Id. at 3, 8.) Plaintiff argues that the ALJ's exclusion of these mental impairments from the RFC determination is reversible error because the ALJ found that Plaintiff's mental impairments had at least some effect on Plaintiff's ability to perform skilled work. (Id. at 9.)

#### 1. The ALJ's Determination At Step Two.

After finding that Plaintiff had severe degenerative disc disease, the ALJ addressed Plaintiff's non-severe mental limitations within the severity analysis at step two. (Dkt. 12-3 at 27.) The ALJ noted that "[i]n order to determine [Plaintiff's] residual functional capacity, the undersigned has considered the functional limitations resulting from all of [Plaintiff's] medically determinable impairments, including those that are nonsevere." (Id.) The ALJ then proceeded through a detailed analysis of Plaintiff's mental impairments, including the paragraph B criteria, in determining that they were non-severe. (Id. at 27-29.) The ALJ specifically found that Plaintiff had mild limitations with respect to the first functional area of understanding, remembering or applying information, the second functional area of interacting with others, with the third functional area of concentrating, persisting or maintaining pace, and to the fourth functional area of adapting or managing oneself. (Id. at 28-29.)

At the end of the step-two analysis, the ALJ noted that:

> [t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.

(Id. at 29.) The ALJ concluded step two by remarking that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Id.)

### 2. Legal Standard.

The ALJ alone determines a claimant's RFC after consideration of "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is the responsibility of the ALJ, not the claimant's physician to determine residual functional capacity."); McLeod v. Astrue, 640 F.3d 881, 884-85 (9th Cir. 2011). In formulating an RFC, the ALJ weighs medical opinions, non-medical source opinions, and the claimant's credibility. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 (9th Cir. 2009); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). An ALJ need not adopt any one medical opinion, but instead translates the claimant's physical and mental condition into work-related restrictions and functions. See Ly v. Colvin, 2014 WL 4795044, at *11 (E.D. Cal. Sept. 25, 2014) (citing Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir. 2008)).

However, an ALJ may not make proprietary determinations regarding the claimant's condition not reflected in the medical evidence. See, e.g., Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); Javier A. G. v. Saul, 2020 WL 6940042, at *9 (C.D. Cal. Nov. 25, 2020) ("[A]n ALJ may not substitute his or her lay interpretation of raw medical data in making an RFC assessment in lieu of a qualified expert's medical opinion.").

### 3. Analysis.

As set forth above, the ALJ determined that Plaintiff had the ability to perform a reduced range of light work as defined in 20 C.F.R. §§ 404.1657(b) and 416.967(b). (Dkt. 12-3 at 29.) Specifically, the ALJ determined that Plaintiff could "lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; [was] precluded from climbing ladders, ropes or scaffolds, but [could] occasionally balance, stoop, crouch, crawl and climb ramps and stairs; and [had to] further avoid any exposure to unprotected hazards or dangerous machinery." (Id. at 29-30.) However, the ALJ did not mention or discuss Plaintiff's established mental limitations at any point after step two despite providing extensive analysis of Plaintiff's severe physical impairment during the RFC assessment. (Id. at 29-33.)

As discussed, Plaintiff contends only that the ALJ's failure to account for his non-severe mental impairments in formulating the RFC was error. In support of his argument, Plaintiff points to Hutton v. Astrue, 491 F. App'x 850 (9th Cir. 2012). (Dkt. 13 at 9.) In Hutton, the ALJ determined at step two that plaintiff's PTSD "existed but was 'nonsevere.'" Hutton, 491 F. App'x at 850. More specifically, the ALJ found that the plaintiff had mild limitations in the area of concentration, persistence, or pace. Id. However, the ALJ "discredited Hutton, his treating physicians' opinions, and the VA's disability rating." Id. The ALJ then omitted Hutton's PTSD from the RFC assessment. Id. The Ninth Circuit found this to be error and explained that "while the ALJ was free to reject Hutton's testimony as not credible, there was no reason for the ALJ to disregard his own finding that Hutton's non-severe PTSD caused some 'mild' limitations." Id. at 851. The court therefore reversed and remanded for reconsideration of the RFC. Id.

The Court concludes that that rationale from Hutton applies here because the ALJ simply did not address Plaintiff's mild mental limitations in the RFC determination. See, e.g., Diane v. Kijakazi, 2023 WL 7301969, at *3 (C.D. Cal. Nov. 6, 2023) ("Following Hutton, several courts have found reversible error where

the ALJ failed to adequately address how mild mental impairment limitations found at step two affected the assessment of RFC conducted at step four."); Frary v. Comm'r of Soc. Sec., 2021 WL 5401495, at *10-12 (E.D. Cal. Nov. 18, 2021) (collecting cases finding reversible error based on Hutton).  Indeed, just like in Hutton, the ALJ here did not provide any reason to disregard his own findings that Plaintiff had mild limitations in all four areas of mental functioning.  (Dkt. 12-3 at 28-29.)  Thus, the Court concludes that the ALJ should have considered whether Plaintiff's mild mental limitations assessed at step two should be reflected in Plaintiff's RFC.  See Diane, 2023 WL 7301969, at *4 ("The ALJ neither includes any limitations in the RFC that address Plaintiff's mild limitation in concentration, persistence, and pace, nor does he describe why that mild limitation does not affect Plaintiff's RFC.").

      Moreover, the Court cannot find this error harmless in light of the VE's testimony.  (Dkt. 12-3 at 58-61.)  At the hearing, the ALJ asked the VE to consider whether a hypothetical individual with Plaintiff's same age, education, work experience, and physical limitations could perform Plaintiff's past skilled job.  (Id. at 58.)  The VE testified that the hypothetical individual would be able to do so.  (Id.)  The ALJ then modified the hypothetical to include the same physical limitations, but added that the individual would be limited to simple routine tasks.  (Id. at 58-59.)  This individual, the VE concluded, would not be able to perform Plaintiff's past skilled job.  (Id. at 59.)  Plaintiff's attorney then posed two additional hypotheticals that included mental limitations.  (Id. at 60-61.)  The first hypothetical described an individual with Plaintiff's physical limitations that was also off task more than 20 percent of the time.  (Id. at 60.)  The second hypothetical described an individual with Plaintiff's physical limitations that was limited to simple routine tasks and was absent from work four days per month.  (Id. at 61.)  The VE determined that neither hypothetical individual would have any work available to them available in the national economy.  (Id.)

10

Ultimately, the first hypothetical became Plaintiff's RFC and the ALJ concluded that Plaintiff was able to perform his past skilled work. (Id. at 29-32.) However, it is unclear whether Plaintiff's RFC would have included additional mental limitations had the ALJ properly considered Plaintiff's mild mental limitations assessed at step two. Based on the VE's testimony, if Plaintiff's RFC had included a limitation to simple routine tasks, then Plaintiff would not have been able to perform his past skilled work. (Id. at 59.) Similarly, if Plaintiff's RFC had included a limitation that Plaintiff either be off task more than 20 percent of the time or absent from work four days per month, then there would not have been any work available in the national economy that Plaintiff could perform. (Id. at 61.) Thus, the Court cannot conclude on the current record that the ALJ's error was harmless. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[Harmless error] exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (internal quotation marks omitted)) (superseded by statute on other grounds). Further proceedings are necessary for the ALJ to consider Plaintiff's mild mental limitations assessed at step two.

## VII.
## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 4, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE